The **MINNESOTA CHIPPEWA TRIBE**
et al., Plaintiffs,

v.

**Frank C. CARLUCCI, etc., et al.,**
**Defendants.**

**Civ. A. No. 175–73.**

United States District Court,
District of Columbia.

April 25, 1973.

L. Graeme Bell, III, Native American Rights Fund, Washington, D. C., Thomas W. Fredericks and David H. Getches, Native American Rights Fund, Boulder, Colo., Daniel M. Rosenfelt, Eric E. Van Loon, Center for Law and Education, Cambridge, Mass., for plaintiffs.

Harold H. Titus, Jr., U. S. Atty., Arnold T. Aikens and Michael A. Katz, Asst. U. S. Attys., Washington, D. C., for defendants.

## ORDER

JUNE L. GREEN, District Judge.

In this action plaintiffs seek *inter alia* to require the President of the United States to appoint members of the National Advisory Council on Indian Education pursuant to The Indian Education Act, Title IV of Pub.L.No.92–318, 86 Stat. 334, approved by the President June 23, 1972.[1] In answering the complaint, the government admitted that the President is charged with duties and responsibilities under the statute in question. The answer further admitted that the President has heretofore neither made any appointments to the Council, nor delegated his power to another.

The case is before the Court on the government's "Suggestion for Dismissal of Action as to Richard M. Nixon, President of the United States". Fed.R.Civ. P. 12(h)(3) provides,

> "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

■ In determining whether the Court has jurisdiction over the subject matter, the Court is reminded that

> ". . . where the complaint . . . is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted [and not here relevant] must entertain the suit. . . . Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. . . ." Bell v. Hood, 327 U.S. 678, 681–682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

1. Part D, § 442(a) of the Act provides, "There is hereby established the National Advisory Council on Indian Education . . . which shall consist of fifteen members who are Indians and Alaska Natives appointed by the President of the United States. Such appointments shall be made by the President from lists of nominees furnished, from time to time, by Indian tribes and organizations, and shall represent diverse geographic areas of the country." The complaint does not refer to any lists.

Moreover, the complaint must be construed liberally where plaintiff's assertion of subject matter jurisdiction is questioned by defendant. Caserta v. Home Lines Agency, Inc., 154 F.Supp. 356 (S.D.N.Y.1957), aff'd., 273 F.2d 943 (2d Cir. 1959).

██ A review of the complaint and plaintiffs' jurisdictional statement indicates that the Court has subject matter jurisdiction and that this case may eventually be decided on the merits. Plaintiffs have cited several statutes, e. g., 28 U.S.C. §§ 1331, 1337, 1361, 1362 and 5 U.S.C. §§ 701–706, and the Court is satisfied on the question.

Since the government contends that any claim against the person of the President is barred by the separation of powers doctrine, the Court now addresses itself to this issue.

 The President of the United States is not completely immune from judicial process for the sole reason that he is President. Atlee v. Nixon, 336 F. Supp. 790 (E.D.Pa.1972), (dictum); *cited with approval in* Meyers v. Nixon, 339 F.Supp. 1388 (S.D.N.Y.1972) (dictum). Chief Justice Marshall held long ago that the judiciary has jurisdiction over the President to compel him to perform a nondiscretionary act required by law. United States v. Burr, 25 Fed.Cas. p. 30, No. 14,692d (C.C.A.Va.1807) (subpoena *duces tecum* against the President held proper).

Suits against the President have generally been unsuccessful for several reasons, none of which appears present in the case *sub judice.*

██ The first reason is lack of standing. *E. g.,* Mottola v. Nixon, 464 F.2d 178 (9th Cir. 1972). In the case at bar, it appears plaintiffs have a personal stake and interest in the outcome of the controversy and might suffer actual injury in fact. Plaintiffs are intended beneficiaries of the Indian Education Act. The National Advisory Council clearly was intended to play a key role in administration of the Act. It appears that the implementation of the Act may be impossible or impracticable unless the Council is constituted by the President.[2]

The second reason suits against the President have foundered is that they relate to "executive" or "discretionary" acts. Mississippi v. Johnson, 4 Wall (71 U.S.) 475, 18 L.Ed. 437 (1866). More recently, the Supreme Court has defined a question as "political" if it involves one of the following:

" . . . a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question." Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962).

██ Based on the present record it appears that this case does not fall within the *Baker* definition, and that *Mississippi* is distinguishable. Plaintiffs do not pray that the Court determine whether Indians are recognized as tribes. They do not ask that the Court alter the special relationship between Indians and the United States. Their claim does not involve the President's role as Commander in Chief of our armed forces or as an architect of our foreign policy. They do not seek to enjoin the President from executing the law.

Plaintiffs' suit does not relate to ongoing supervisory acts which require the exercise of judgment, but to single specific "one-shot" acts, appointments to the Council. Although the President clearly has discretion to choose whom to appoint to the Council, he apparently has no dis-

---

2. The responsibilities of the Council are described in § 442(a)–(c) of the Act.

cretion to decide if the Council should or should not be constituted. The Indian Education Act, § 442(a) provides that ". . . appointments [to the Council] *shall* be made by the President. . . ." (emphasis added). *See* McQueary v. Laird, 449 F.2d 608, 611 (10th Cir. 1971) (mandamus will issue to require the exercise of permissible discretion.)

In the third place, joinder of the President as a party defendant is generally unnecessary: a plaintiff may be afforded complete relief by suing a member of the President's Cabinet. *E. g.*, Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952). In the instant case, however, it appears that plaintiffs' only remedy is to sue the President directly. Only the President is given the power to make appointments to the Council. As earlier noted, the President has neither made such appointments nor delegated his power to another. The record does not suggest any implied delegation.

For the foregoing reasons, it is by the Court, this 25th day of April 1973,

Ordered that the Suggestion for Dismissal of Action as to Richard M. Nixon, President of the United States, should be and the same hereby is denied.