[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13306
Non-Argument Calendar
_____

Agency No. 21071-17 L

STEVEN ANDREW HERNDON,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court
_____

(January 24, 2019)

Before MARTIN, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Steven Herndon, proceeding *pro se*, appeals the Tax Court's order granting

the Commissioner of Internal Revenue's motion for summary judgment and

imposing sanctions against him.  The Tax Court affirmed the imposition of a levy

on Herndon's property after he failed to pay federal income taxes for two years.

Herndon argues that he has a constitutional right to withhold payment on the levy

until the government sufficiently responds to various grievances on policies that he

says "collectively constitut[e] an oppression of the People."[1]  The Tax Court

disagreed and imposed sanctions after Herndon continued to pursue this line of

argument in a motion to reconsider.  After careful review, we find no error and

therefore affirm.

## I

Herndon first argues that the Tax Court erred in affirming the IRS's decision

to sustain the levy.  "We review *de novo* the Tax Court's grant of summary

judgment and review the facts and apply the same legal standards as the Tax

Court."  *Roberts v. Comm'r*, 329 F.3d 1224, 1227 (11th Cir. 2003) (per curiam)

(citation omitted).  Accordingly, we review the IRS's decision to sustain the levy

for an abuse of discretion.  *Sego v. Comm'r*, 114 T.C. 604, 610 (2000).

The Internal Revenue Code affords a taxpayer the opportunity to challenge

the propriety of a proposed levy and to "offer[] . . . collection alternatives" in a

---

[1] In particular, he faults the government for, among other things, treating the debt ceiling like "an arbitrary plateau," failing to pass a balanced budget, committing acts of "waste and abuse" in foreign aid and various entitlement programs, and enacting a "fraudulent Social Security system that is nothing more than a government [P]onzi scheme."

2

collection due process ("CDP") hearing before the Office of Appeals.  26 U.S.C. § 6330 (c)(2)(A)(ii)–(iii).  Collection alternatives must "be available to other taxpayers in similar circumstances" and could include, for instance, "a proposal to withhold the proposed levy or future collection action in circumstances that will facilitate the collection of the tax liability, an installment agreement, an offer to compromise, the posting of a bond, or the substitution of other assets."  26 C.F.R. § 301.6330-1(e)(1), (3).

Herndon contends that the IRS improperly rejected his request to "withhold the [tax liability] while seeking a redress of governmental oppression." Essentially, he argues that the First Amendment compels the IRS to accept this alternative, contending that the inability to withhold money would "do[] irreparable injury" to his right to petition the government to redress his grievances. He cites, among other authorities, a letter from the First Continental Congress and excerpts from The Federalist Papers for the proposition that a right to withhold revenue is bound up within the right to petition the government.

Whatever the merits of Herndon's argument as a matter of first principles, he has not shown that the Office of Appeals abused its discretion.  First, as the government points out, Herndon's proposed collection alternative "amounts to nothing more than an indefinite deferment."  Although the First Amendment protects his right to petition the government, it neither guarantees "that advocacy

will be effective" nor imposes a corresponding "affirmative obligation on the government to listen [or] respond" to his requests. *Smith v. Arkansas State Highway Emp., Local 1315,* 441 U.S. 463, 465 (1979). There is no guarantee that the government will remedy Herndon's grievances to his liking, and thus it is difficult to see how his proposal would "facilitate the collection of the tax liability" in the future. 26 C.F.R. § 301.6330-1(e)(1), (3).

What is more, Herndon's proposed collection alternative is clearly not one that could "be available to other taxpayers in similar circumstances." *Id.* It appears that Herndon would not be satisfied with anything less than a policy shift in each of the areas that he described, as he asserts that "a [r]edress demands a remedy, reparation, or satisfaction from . . . grievances." Herndon's proposal, boiled to its essence, would indefinitely excuse him from paying taxes because he is unhappy with Congress's policy choices. It is unclear how the government could collect any revenue were the same accommodation "available to other taxpayers in similar circumstances." *See Randall v. Comm'r*, 733 F.2d 1565, 1567 (11th Cir. 1984) (rejecting the argument that a taxpayer could withhold taxes because of "objections to the Government's military expenditures" and opining that "following taxpayer's argument would suggest that Congress intended to put the ability of the Government to collect taxes in great jeopardy"). The Office of Appeals did not abuse its discretion in upholding the levy.

4

## II

Herndon next argues that the Tax Court abused its discretion by sanctioning him after he filed what he called a "Motion for Reconsideration of Summary Judgment."[2]  The Tax Court fined Herndon $1,000 for "restat[ing] the same frivolous and groundless arguments he raised at the CDP hearing, in his petition, and in his opposition to [the IRS's] motion for summary judgment."

We review the Tax Court's decision to impose sanctions for an abuse of discretion.  *Roberts*, 329 F.3d at 1229.  The Tax Court may require that a litigant pay "a penalty not in excess of $25,000" if, as relevant here, his "position . . . is frivolous or groundless."  26 U.S.C. § 6673(a)(1).  We have held that sanctions are particularly appropriate where a litigant "asserts various tax protester type arguments" that "are stale and have long been [rejected]," *McNair v. Eggers*, 788 F.2d 1509, 1510 (11th Cir. 1986) (per curiam), and where he is "well warned by the Tax Court that his positions were frivolous beyond doubt," *Biermann v. Comm'r*, 769 F.2d 707, 708 (11th Cir. 1985) (per curiam).  *See Pollard v. Comm'r*, 816 F.2d 603, 604–05 (11th Cir. 1987) (per curiam) (fining a taxpayer who argued that the Sixteenth Amendment was not validly ratified).

---

[2] Herndon's label notwithstanding, the Tax Court treated his motion as a motion to vacate or revise, pursuant to Tax Court Rule 162.

The Tax Court did not abuse its discretion in imposing sanctions here. After rejecting Herndon's argument that he could "withhold money wanted by the rulers while attempting to redress grievances," the court admonished him that he could face penalties if he "continue[d] to pursue frivolous or groundless arguments before the Court." Despite this warning, Herndon—relying on pre-Revolutionary War letters, the Declaration of Independence, and The Federalist Papers—doggedly insisted that he has a "constitutionally protected" right to "withhold . . . owed taxes during a redress process." His assertion is the kind of "stale," "tax protester . . . argument[]" that has warranted sanctions in the past. *McNair*, 788 F.2d at 1510. We therefore decline to second-guess the Tax Court's decision to impose sanctions for Herndon's "frivolous or groundless" claims under § 6673(a)(1)(B).

**AFFIRMED.**

6